UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x
RANDOLPH-RAND CORPORATION,            )   Civil Action No.
on behalf of itself and all others similarly   )
situated,                             )
                                      )
              Plaintiff,              )   **CLASS ACTION COMPLAINT**
                                      )
       -against-                      )
                                      )
YKK CORPORATION; YKK CORPORATION      )
OF AMERICA; YKK (U.S.A.) INC.; YKK    )
SNAP FASTENERS AMERICA, INC.;         )
WILLIAM PRYM GMBH & CO., KG; PRYM     )
CONSUMER USA, INC.; PRYM FASHION,     )
INC.; COATS PLC; COATS NORTH AMERICA  )
DE REPUBLICA DOMINICANA, INC.; and    )   JURY TRIAL DEMANDED
SCOVILL FASTENERS, INC.,              )
                                      )
              Defendants.             )
———————————————————————x



07 CV 10324

Plaintiff, Randolph-Rand Corporation, by and through its undersigned attorneys, for its Complaint alleges the claims set forth herein. Plaintiff alleges its antitrust claims individually and on behalf of a class of all those similarly situated. Plaintiff's claims as to itself and its own actions, as set forth in paragraph 6, are based on its own knowledge. All other allegations are based upon information and belief pursuant to counsel's investigation.

NATURE OF THE ACTION

1.    In this antitrust class action, Plaintiff alleges that Defendants entered into a contract, combination or conspiracy to fix, raise, maintain or stabilize the price of and to allocate customers and geographic territories -- worldwide -- for various types of fasteners mainly used in the garment and footwear industries and as hardware for accessories such as handbags. Fasteners include zippers, snaps, hooks and eyes, rivets, eyelets and similar fastening devices that attach

two or more things together, along with the machines that perform the attaching (collectively referred to as "Fasteners"). Defendants actions violated Section 1 of the Sherman Act, 15 U.S.C. § 1.

2. Plaintiff brings this action on behalf of itself and an alleged class of direct purchasers who purchased Fasteners, by way of transactions that took place in whole or in part in the United States, from Defendants and their co-conspirators from January 1, 1977 to the present (the "Class Period") and who were overcharged as a result of the illegal restraint of trade.

3. Plaintiff alleges that during the Class Period Defendants maintained uniformity of prices in Fasteners by colluding and conspiring orally and in writing to control the worldwide market for Fasteners through the conspiracy by exchanging price information, fixing minimum prices, coordinating price increases, and allocating between themselves customers and products worldwide.

4. As a direct and proximate result of this conspiracy, Defendants have restrained competition in the market for Fasteners and have injured Plaintiff and each Class member in their business and property by causing them to pay higher prices for Fasteners than they would have paid in a competitive market absent the concerted unlawful activity alleged herein.

5. Plaintiff seeks damages on behalf of itself and the Class for amounts overpaid for Fasteners.

## PLAINTIFF

6. Plaintiff Randolph-Rand Corporation is a New York corporation with its principal place of business at 44 East 32nd Street, New York, New York 10016. Plaintiff is a wholesale distributor of hardware, including fasteners, used in the manufacture of apparel and accessories. During the Class Period, Plaintiff purchased Fasteners directly from one or more of the Defendants at artificially inflated prices and was injured as alleged herein.

## DEFENDANTS

The YKK Defendants

7. Defendant YKK Corporation ("YKK") is a corporation established under the laws of Japan with its principal place of business located in Tokyo, Japan. YKK operates in 70 countries worldwide through approximately 123 affiliates. In the Americas alone, YKK owns 15 operating companies. Its first office was opened in New York in 1960, in which city it still maintains an office. YKK manufactures and sells fasteners through its Fastening Products Group, which contains three divisions: Slide Fastener, Snap Fastener and Button, and Textile and Plastic Products Divisions. Those divisions have affiliated offices in the United States in California, Georgia, Illinois, Kentucky, Texas, Michigan, New Jersey, New York and Tennessee. During the Class Period, YKK manufactured, marketed, sold and/or distributed Fasteners to customers throughout the United States and the world, either directly or through its affiliated companies. YKK owns about half the world's market share in zippers. As of 2003, the world's zipper market, only a portion of the total Fasteners market, was valued at approximately $4.3 billion.

8. Defendant YKK Corporation of America, Inc., is a New York corporation with its principal place of business at One Parkway Center, 1850 Parkway Place, Suite 300, Marietta, Georgia 30067. YKK Corporation of America is ultimately a wholly-owned and controlled subsidiary of Defendant YKK. YKK Corporation of America, Inc. is the YKK's Western Hemisphere parent. During the Class Period, YKK Corporation of America manufactured, marketed, sold and/or distributed Fasteners to customers throughout the United States and the Americas, either directly or through its affiliated companies.

9. Defendant YKK (U.S.A.) Inc., is a New York corporation with its principal place of business at 1300 Cobb Industrial Drive, Marietta, Georgia 30066. YKK (U.S.A.) Inc. is a

3

wholly-owned and controlled subsidiary of its parent, YKK. YKK (U.S.A.) Inc. operates the Fastening Products Group in the United States, with offices in California, Illinois, New Jersey, New York York, Texas and Washington. YKK (USA) Inc. is the largest zipper producer in the United States. During the Class Period, YKK (U.S.A.) Inc. manufactured, marketed, sold and/or distributed Fasteners to customers throughout the United States, either directly or through its affiliated companies.

10. Defendant YKK Snap Fasteners America, Inc., is a Delaware corporation with its principal place of business at 302 Factory Avenue, Lawrenceburg, Kentucky 40342, and with manufacturing plants located in Lawrenceburg and Centerville, Tennessee. YKK Snap Fasteners America Inc.'s predecessor in 1987 became part of YKK Corp. During the Class Period, YKK Snap Fasteners America, Inc., manufactured, marketed, sold and/or distributed Fasteners to customers throughout the United States, either directly or through its affiliated companies.

11. YKK brands registered and sold in the United States include Cosmolon®, Decathlon®, Echelon®, Fasten Mates®, Illusion®, Powerhook® Smarttouch®, Snapet®, Vislon®, and Ziplon®.

12. Defendants YKK Corporation, YKK Corporation of America, Inc., YKK (U.S.A.) Inc., and YKK Snap Fasteners America, Inc., together with the numerous other subsidiaries of the YKK Corporation not named as defendants here, are collectively referred to herein as "the YKK Defendants."

The Prym Defendants

13. Defendant William Prym GmbH & Co. KG is a company established under the laws of Germany with its principal place of business located at Zweifaller Straße 130, D-52224 Stolberg, Germany. William Prym GmbH & Co. KG operates in over 60 countries through three divisions: Prym Consumer, Prym Fashion and Inovan. Its fasteners business is operated through

4

the first two divisions. During the Class Period, William Prym GmbH & Co. KG manufactured, marketed, sold and/or distributed Fasteners to customers throughout the United States and the world, either directly or through its affiliated companies. Prym first established a workplace in the United States in 1960, when it opened offices in New York City.

14. Defendant Prym Consumer USA, Inc., is a South Carolina corporation with its principal place of business located at 950 Brisack Road, Spartanburg, SC 29303. Prym USA was known as the Prym Dritz Corporation after Prym acquired the Dritz Corporation in 1988. In 2005, the company changed its named from Prym Dritz Corporation to Prym Consumer USA. Prym Consumer USA is a wholly-owned and controlled subsidiary of U.S. holding company William Prym, Inc., which is a wholly-owned and controlled subsidiary of William Prym GmbH & Co. KG. During the Class Period, Prym Consumer USA directly manufactured, marketed, sold and/or distributed Fasteners to customers throughout the United States. Some of Prym's branded fasteners include Softseal®, Ezy-Pull®, Flexisnap® and Flower-Grip®. Prym Consumer USA is the largest manufacturer and distributor of sewing, quilting and craft-related notions in North America.

15. Prym Fashion, Inc., is a South Carolina corporation with its principal place of business located at 950 Brisack Road, Spartanburg, SC 29303. Prym Fashion, Inc., is a wholly-owned and controlled subsidiary of Prym Inovan GmbH Co. KG of Stolberg, Germany, which is a wholly-owned and controlled subsidiary of William Prym GmbH & Co. KG. During the Class Period, Prym Fashion, Inc. directly manufactured, marketed, sold and/or distributed Fasteners to customers throughout the United States. For a period up to at least November 2000, Prym Fashion, Inc. had a principal office 50 Greco Lane, Warwick, RI 02886.

16. Defendants William Prym GmbH & Co. KG, Prym Consumer USA, Inc., and Prym Fashion, Inc., together with numerous other subsidiaries not named as defendants here, are collectively referred to herein as "the Prym Defendants."

The Coats Defendants

17. Defendant Coats plc is a corporation established under the laws of the United Kingdom with its principal place of business located in Uxbridge, Middlesex, United Kingdom. Since April 2004, Guinness Peat Group plc has owned 100% of the ordinary shares in Coats Group Limited, which owns 100% of the ordinary shares in Coats plc. Prior to 2001, Coats plc was known by several other names including Coats Patons plc and Coats Viyella plc. Coats is the second largest manufacturer of zippers in the world. During the Class Period, Coats plc and its predecessor entities manufactured, marketed, sold and/or distributed Fasteners to customers in 67 countries throughout the world including the United States, either directly or through its affiliated companies.

18. Defendant Coats North America de Republica Dominicana, Inc., is a North Carolina corporation with its principal place of business located at 3430 Torington Way, Suite 301, Charlotte, North Carolina 28201. Coats North America is a wholly-owned and controlled subsidiary of Coats plc. During the Class Period, Coats North America manufactured, marketed, sold and/or distributed Fasteners to customers throughout the United States, either directly or through its affiliated companies.

The Scovill Defendant

19. Defendant Scovill Fasteners, Inc., is a Delaware corporation with its worldwide headquarters at 1802 Scovill Drive, Clarkesville, Georgia 30523. During the Class Period, Scovill manufactured, marketed, sold and/or distributed Fasteners to customers throughout the United States and the world.

## JURISDICTION AND VENUE

20. Jurisdiction of this Court is founded on 28 U.S.C. §§1331, 1337(a) and 15 U.S.C. §§ 6(a), 15 and 26.

21. Venue is proper in this District pursuant to 15 U.S.C. §§ 15, 22 and 26 and pursuant to 28 U.S.C. §1391, because at all times relevant to the Complaint Defendants have transacted business in this District, acted through agents here or were themselves found here. Moreover, a substantial part of the events giving rise to the claims for relief occurred in this District; and Defendants regularly and continuously conduct business in interstate commerce that is carried out in this District.

22. This Court has *in personam* jurisdiction over each of the Defendants because each, in furtherance of the conspiracy to restrain trade in the Fasteners market, acted continuously, regularly and systematically in this District, purposefully availing themselves of the privilege of conducting activities here, by transacting business within this District and/or contracting to supply Fasteners here. Each of the Defendants was engaged in a restraint of trade that was designed to have, and had, a direct, substantial and reasonably foreseeable effect on commerce among the United States and between the United States and foreign nations that caused injury to persons and entities residing in, located in, or doing business in the United States. Thus, each Defendant has contacts with this District more than sufficient to subject it to service of process and satisfy due process of law.

## INTERSTATE TRADE AND COMMERCE

23. During the Class Period, Defendants together controlled a substantial portion of the Fasteners market in Europe and a majority of the market in the United States.

24.  The conduct of Defendants and their co-conspirators has taken place in and affected the continuous flow of interstate trade and commerce of the United States in that, among other things:

   (i)   Defendants and their co-conspirators have sold Fasteners throughout the United States;

   (ii)  Defendants and their co-conspirators have each used instrumentalities of interstate commerce to sell Fasteners throughout the United States;

   (iii) Defendants have traveled between the states and exchanged communications using interstate wires in furtherance of the conspiracy to restrain trade in the Fasteners market; and

   (iv)  Defendants and their co-conspirators have caused antitrust injury to Plaintiff and members of the Class who are also engaged in commerce by artificially increasing the prices they paid for Fasteners.

The European Commission's Investigation

25.  Existence of the cartel became publicly known when, on September 19, 2007, the European Commission revealed in a press release that it was fining Defendants, among others, for illegal restrictive business practices in the Fastener industry.

26.  The Commission's investigation, through its Directorate General for Competition, uncovered "four separate infringements" or sets of agreements between different combinations of parties that included Defendants along with two European fastener companies: A. Raymond and Berning + Söhne and a German trade association for the textile industry, Fachverband Verbindungs- und Befestigungstechnik (VBT).

27. Over the course of several years, cartel members agreed to coordinate price increases, allocate customers, exchange price information and share the different portions of the Fasteners market between themselves.

28. The Commission had previously investigated and, in 2004, fined Coats and Prym for cartel activity in the needles market for the period 1994-1999. The two companies were alleged to have entered into written agreements with a third manufacturer, Entaco, that provided Entaco with a grant of exclusive access to certain needles markets in exchange for its promise not to compete with Prym's fastener business. The Commission investigated the cartel after Entaco came forward with information about the agreements.

29. In November 2001, the Commission conducted surprise inspections at sites where Defendants manufactured their goods.

30. Coats and Prym appealed the decisions of the Commission regarding the needles cartel. On September 21, 2007, the European Court of First Instance confirmed the existence of that cartel and upheld the majority of the fines imposed on the two companies.

31. In addition to information regarding the needles cartel, the 2001 inspections yielded intelligence that led the Commission to look into other possible conspiracies in haberdashery markets. The investigation and findings relating to the Fasteners cartel followed.

32. The Commission imposed fines of nearly €329 million on Defendants the Prym Group, the YKK Group, the Coats Group, and Scovill, in addition to Raymond, Berning and VBT for operating a cartel in the markets for Fasteners in Europe and worldwide.

33. Documents produced to the Commission by Defendants confirmed some of the findings of the Commission's investigation, as did statements made by representatives of the Defendants in applying for the Commission's leniency program.

34. The Commission examined the possibility of a "worldwide" cartel based on its investigation and determined that high-level executives of Defendants participated in meetings and discussions with competitors during which the unlawful actions took place.

35. Evidence gathered by the Commission indicates that the executives knew that their activities were illegal.

36. On September 19, 2007 Prym issued a press release stating that: "The members of the board of management of the Prym Group in charge at the times of the cartels, who are no longer active in the Prym undertakings, have at all times admitted the participation and cooperated with the Commission in its investigations."

37. The Commission's September 2007 press release acknowledged that Prym had received full immunity from fines under the Commission's leniency program "in respect of the worldwide cartel on the markets for other fasteners and attaching machines," since it was the first to provide information about the cartel for "other fasteners and their attaching machines." Fines levied against Prym with respect to the other cartels were reduced.

38. The European Union's Competition Commissioner, Neelie Kroes, stated that the conspiracy among these "major fastening technology producers" maintained artificial price levels and included agreements to allocate customers and markets.

39. Defendants Prym, YKK and Coats received complete or partial immunity and reduction of fines, for their cooperation in the Commission's investigation. This is tantamount to an admission that they were aware of the existence of the conspiracy, that they identified participants therein, provided evidence of the conspiracy and professed to their own and their co-conspirators' participation in the unlawful conduct.

The Conspiracy to Control Commerce Within the United States

40. As earlier as 1977, Defendants Prym and Coats and their co-conspirators, acted to restrain trade through a conspiracy to fix prices, allocate markets customers, share secret trade and pricing information and coordinate price increase in the Fasteners market.

41. Defendants YKK and Scovill later joined the conspiracy and through it, agreed to likewise act in restraint of trade.

42. Specifically, from 1991-2001, all Defendants and their co-conspirators agreed to coordinated price increases in annual "price rounds" with respect to fasteners other than zippers, and their attaching machines. This conspiracy was perpetrated through work circles supported by VBT.

43. From 1999-2003, Defendants YKK and Prym conspired to fix prices in the Fasteners market country-by-country and product-by-product. Additionally, said Defendants allocated customers for fasteners other than zippers, and attaching machines, worldwide

44. From April 1998 to November 1999, Defendants YKK, Prym and Coats met, exchanged price information, discussed price increases and fixed prices for zippers.

45. From 1977-1998, Defendants Prym and Coats met covertly and agreed to share the Fasteners market between themselves.

## ANTITRUST INJURY

46. The unlawful contract, combination or conspiracy alleged herein has had, and continues to have, the following effects:

    (i) Prices charged by Defendants and their co-conspirators to Plaintiff and the members of Class for Fasteners were maintained at artificially high and noncompetitive levels;

(ii) Plaintiff and members of the Class were required to pay more for Fasteners than they would have paid in a competitive marketplace had Defendants and their co-conspirators not engaged in the unlawful and anti-competitive conduct alleged herein;

(iii) Because of Defendants' illegal actions, Plaintiff and members of the Class have been deprived of the benefits of the free flow of interstate commerce in the market for Fasteners.

47. As a direct and proximate result of the illegal contract, combination or conspiracy alleged above, Plaintiff and members of the Class were injured and financially damaged in their businesses and property, in amounts that are not presently determined.

## FRAUDULENT CONCEALMENT

48. Defendants and their co-conspirators have actively concealed the unlawful conduct alleged herein from Plaintiff and have carried out their conspiracy covertly and almost entirely within the knowledge of their high-level executives.

49. Even exercising reasonable diligence, Plaintiff did not discover, and could not have discovered until very recently, when the result of the European Commission's investigation was revealed, that Defendants and their co-conspirators were engaged in a "worldwide" violation of the antitrust laws.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action as a class action under Fed. R. Civ. P. 23(a), b(2) and 23(b)(3) on behalf of itself and the following Class:

> All persons or entities who directly purchased zippers, snaps, hooks and eyes, rivets, eyelets and similar fastening devices, as well as fastening machines, in transactions that took place in whole or in part in the United States, from one or more of the Defendants from January 1, 1977 to present.

51. The Class excludes Defendants, their parents, subsidiaries, affiliates, officers, directors, agents, assigns and employees. Also excluded are any federal, state or local governmental entity, and any judge or judicial officer presiding over this matter, judicial staff, and the members of their immediate families.

52. Defendants' anticompetitive conduct alleged herein has imposed a common antitrust injury on all members of the Class and has violated section 1 of the Sherman Act, 15 U.S.C. § 1. The members of the Class are so numerous that joinder of all members is impracticable. The exact number and identity of Class members is unknown to Plaintiff but can readily be ascertained from books and records maintained by Defendants or their agents. Upon information and belief, there are thousands of individuals or entities in the United States and around the world who purchased Fasteners from Defendants.

53. There are questions of law or fact common to the Class members concerning:

   (i) Whether Defendants entered into a contract, combination or conspiracy to fix, raise or maintain prices for Fasteners worldwide;

   (ii) Whether Defendants conspired to allocate customers for Fasteners country-by-country and product-by-product worldwide;

   (iii) Whether Defendants met to discuss price increases and share confidential price information regarding Fasteners;

   (iv) The duration and extent of the contract, combination or conspiracy alleged herein;

   (v) Whether Defendants were participants in the contract, combination or conspiracy alleged herein;

    (vi)    Whether the alleged contract, combination or conspiracy violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

    (vii)    The effect of Defendants' contract, combination or conspiracy upon interstate and international commerce;

    (viii)    Whether the alleged contract, combination or conspiracy caused injury and damage to Plaintiff and members of the Class and the appropriate measure of damages; and

    (ix)    Whether Plaintiff and members of the Class are entitled to injunctive and other equitable relief.

    (x)    Whether Plaintiff's claims are typical of the claims of each of the members of the Class.

    (xi)    Whether Plaintiff will fairly and adequately protect the interests of the Class.

54. There is no conflict of interest between Plaintiff and other members of the Class. Plaintiff is represented by counsel experienced in class actions and international antitrust law.

55. Defendants have acted, continue to act, have refused to act and continue to refuse to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

56. Defendants' relationships with members of the Class and Defendants' anticompetitive conduct toward members of the Class have been substantially uniform. Common questions of law and fact exist with respect to all Class Members and predominate over any individual questions of law and fact.

57. This class action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all Class members is not only impracticable, but impossible. The damages suffered by Plaintiff and members of the Class are small in relation to the expense and burden of individual litigation, and, therefore, it is highly impractical for such Class members individually to attempt redress for the wrongful anticompetitive conduct alleged herein. There will be no extraordinary difficulty in managing this Class action.

## COUNT I

### Violation of Section 1 of the Sherman Act

58. Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

59. Beginning at least as early as January 1, 1977, and continuing to date, Defendants and their co-conspirators entered into a contract, combination or conspiracy to restrain interstate trade in violation of Section 1 of the Sherman Act.

60. In furtherance of the unlawful conspiracy, each of Defendants and their co-conspirators has committed overt acts, including, *inter alia*:

    (i) coordinating to establish price increases on various types of Fasteners sold in the United States and worldwide;

    (ii) conspiring to fix, maintain or stabilize prices of various types of fasteners on a product-by-product basis

    (iii) conspiring to fix, maintain or stabilize prices of various types of fasteners on a country-by-country basis;

    (iv) conspiring to allocate customers in the Fasteners market;

    (v) conspiring to allocate the manufacture, sale and distribution of various products in the Fasteners market by product;

  (vi) conspiring to allocate the manufacture, sale and distribution of various products in the Fasteners market by geographic location;

  (vii) communicating with co-conspirators regarding confidential price information and price increases in the zipper market worldwide; and

  (viii) covertly meeting with co-conspirators to conceal the conspiracy's existence so as to advance the illegal conduct described.

61. Through these activities, Defendants and their co-conspirators restrained trade among the United States and with foreign nations worldwide.

62. Defendants' anti-competitive agreement carried out their conspiracy through coordinated price increases, which resulted in Plaintiff and members of the Class paying higher prices for Fasteners than they would have absent the conspiracy.

63. As a direct and proximate result of the conspiracy, Defendants have restrained competition in the Fasteners market and injured Plaintiff and each Class member in their business and property.

64. Plaintiff and the members of the Class, therefore, have been injured and financially damaged in their respective businesses and property in an amount to be determined according to proof and are entitled to recover threefold the damages sustained pursuant to 15 U.S.C. § 15.

65. The conduct of Defendants and their co-conspirators constitutes a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that:

66. Pursuant to Fed. R. Civ. P. 23, the Court permit this action to be maintained as a class action;

67. Plaintiff, Randolph-Rand Corporation, be appointed class representative;

68. Plaintiff's counsel be appointed Class Counsel.

69. The Court find that the contract, combination or conspiracy, and the actions taken by Defendants and their co-conspirators, were in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

70. The Court enter judgment for Plaintiff and the Class against Defendants, jointly and severally, for treble the damages sustained by Plaintiff and the Class as allowed by law, together with the costs of the action, including reasonable attorneys' fees, and pre- and post-judgment interest.

71. Defendants, their parents, affiliates, subsidiaries, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and prevented from:

   (i) Continuing, maintaining or renewing the contract, combination or conspiracy alleged herein;

   (ii) Engaging in any other contract, combination or conspiracy having similar purpose or effect;

   (iii) Adopting or following any practice, plan, program or device having a similar purpose or effect; and

   (iv) Communicating with any other person engaged in the manufacture, distribution or sale of Fasteners except to the extent necessary in connection with an actual, legal transaction between such parties.

72. That Plaintiff and the Class may have such other and further relief as the Court deems just and proper.

JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

Dated: New York, New York
November 14, 2007

Respectfully submitted,

POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS

By: _____
Michael M. Buchman
J. Douglas Richards
Susan J. Weiswasser
100 Park Avenue
New York, NY 10017
Telephone: (212) 661-1100
Facsimile: (212) 661-8865

David Jaroslawicz
**JAROSLAWICZ & JAROS, LLC**
225 Broadway, 24th floor
New York NY 10007
Telephone: (212) 227-2780
Facsimile: (212) 227-5090